**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-7072**

———————

ERIC ADAM GRUENINGER,

        Petitioner - Appellant,

    v.

DIRECTOR, VIRGINIA DEPARTMENT OF CORRECTIONS,

        Respondent - Appellee.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.    John A. Gibney, Jr., District Judge.  (3:13-cv-00260-JAG)

———————

Argued: October 27, 2015        Decided: February 9, 2016

———————

Before MOTZ, GREGORY, and HARRIS, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by published opinion.  Judge Harris wrote the opinion, in which Judge Motz and Judge Gregory joined.

———————

**ARGUED**:  Michael Allen McIntosh, SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP, Washington, D.C., for Appellant.   Steven Andrew Witmer, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.  **ON BRIEF**:  Mark R. Herring, Attorney General of Virginia, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

———————

PAMELA HARRIS, Circuit Judge:

In 2009, Virginia police arrested Eric Adam Grueninger for sexually abusing his fourteen-year-old daughter. During his first interview with the police investigator, Grueninger was read his Miranda rights and said, "I need an attorney." Three days later, the investigator re-interviewed him without an attorney present, and this time, Grueninger confessed to performing various sexual acts with his daughter. Grueninger ultimately was tried on sexual abuse and child pornography charges. Grueninger's attorney did not file a timely motion to suppress the confession, and the Commonwealth of Virginia ("Commonwealth") relied on Grueninger's confession in securing his conviction.

On state collateral review, Grueninger argued that his attorney's failure to move to suppress his confession under Edwards v. Arizona, 451 U.S. 477 (1981), which prohibits police interrogation after an invocation of Miranda rights, constituted ineffective assistance of counsel. A Virginia circuit court rejected that claim, holding that Grueninger had not been "interrogated" for Edwards purposes, and that his statements therefore would not have been suppressed had counsel so moved. We disagree, and conclude that the state court decision on this point was objectively unreasonable under 28 U.S.C. § 2254(d).

2

We further find that had Grueninger's statements been suppressed, there is a reasonable probability that the outcome of his trial would have been different as to the sexual abuse charges, though not the child pornography charges. Accordingly, we reverse in part and affirm in part the district court order dismissing Grueninger's federal habeas petition.

## I.

## A.

On March 13, 2009, the Department of Social Services in Hanover County, Virginia, received a report that Grueninger was having sexual intercourse and other sexual contact with his fourteen-year-old daughter. The police arrested him that day, and investigator David Klisz met with Grueninger in jail for a first interview. Their interaction was captured on video, which was available to the prosecutor and to Grueninger's attorney, Michael Clower. The video depicts Klisz administering Miranda warnings to Grueninger and Grueninger saying in response, "These are felonies, I need an [a]ttorney."[1] J.A. 342. Grueninger

---

[1] This version of Grueninger's statement comes from an affidavit submitted by Clower in 2011, in connection with Grueninger's state habeas petition. During a pretrial motions hearing, the prosecutor appeared to recall a slightly different formulation of the statement. Unlike Clower's affidavit — credited by the state habeas court in its analysis — the

claims, without disagreement from the Commonwealth, that Klisz immediately ceased all questioning.

On that same day, Klisz searched Grueninger's home with the consent of Grueninger's wife. Klisz found three thumb drives in Grueninger's top dresser drawer, one of which contained photographs and videos of child pornography. He also discovered a laptop in the home's work room. Subsequent forensic analysis revealed that the content on the thumb drive had been accessed on the laptop.

Three days later, on March 16, 2009, Hanover County issued a new arrest warrant with additional charges, and Klisz again visited Grueninger in jail. After administering the <u>Miranda</u> warnings a second time, Klisz asked Grueninger questions about the charges against him. This time, Grueninger answered Klisz's questions and admitted to performing oral sex on his daughter, ejaculating on her, shaving her pubic hair, inserting a yeast infection suppository into her vagina, and bathing with her naked. He also admitted that the computer he primarily used at

---

prosecutor's statement was not sworn, and it is not clear what the basis was for her recollection. The district court and both parties have assumed that what Grueninger said was "These are felonies, I need an attorney," and we do so, as well.

home was the laptop on which child pornography had been stored and accessed.

A grand jury charged Grueninger with two counts of indecent liberties with a child under the age of fifteen, two counts of aggravated sexual battery by a parent, one count of rape by force or threat, three counts of forcible sodomy, and two counts of sexual object penetration (the "sexual abuse charges"). Grueninger also was charged with nine counts of possession of child pornography and one count of distribution of child pornography (the "child pornography charges"). On November 19, 2009, the Circuit Court of Hanover County ("Circuit Court" or "Hanover Circuit Court") held a bench trial.

Local rules required that a motion to suppress, like all motions in limine, be filed in writing before trial. Clower, Grueninger's attorney, did not file a written motion to suppress Grueninger's confession. But on the first day of trial, Clower belatedly took issue with the admissibility of the confession on Edwards grounds. When the prosecutor argued that Clower's objection was untimely, Clower attempted to excuse his delay by explaining that he had only recently become aware of the relevant statements and the timeline; the prosecutor pointed out that in fact, Clower had been afforded "open file discovery," including access to the video of Klisz's interactions with

5

Grueninger.  In any event, she argued, Grueninger's request for a lawyer was not unequivocal, as required to trigger Edwards protections.  The trial court overruled Clower's objection without reaching the merits because Clower had failed to file a motion in limine.  Instead, the court held that the matter "ought to be dealt with as [it came] up" at trial.  J.A. 74.

The confession "came up" at trial when the prosecutor elicited testimony from Klisz regarding Grueninger's inculpatory statements.  But Clower did not object.  At the close of evidence, the trial court noted the importance of Klisz's testimony about his second interview with Grueninger:  "[I]f I find that Detective Klisz's testimony was incredible and that the defendant did not make the statements . . . that have been attributed to him, then the whole case shifts into a different perspective."  J.A. 305.  The court did find Klisz's account of Grueninger's confession credible, and it convicted Grueninger on all counts.

On February 2, 2010, the court sentenced Grueninger to a total term of imprisonment of 235 years, with all but 88 suspended.  On the sexual abuse charges, Grueninger was sentenced to 180 years with all but 74 suspended, and on the child pornography charges, to 55 years with all but 14 suspended.  Grueninger appealed his convictions, arguing that

6

the evidence was not sufficient to sustain them. The Court of Appeals of Virginia affirmed and the Supreme Court of Virginia refused Grueninger's petition for appeal.

**B.**

On July 25, 2011, Grueninger filed a pro se petition for a writ of habeas corpus in the Hanover Circuit Court, before the same judge who had presided over his trial. Grueninger alleged that the admission of his uncounseled confession to Klisz was unconstitutional under Edwards v. Arizona. He also argued, among numerous ineffective assistance claims, that Clower was ineffective for not moving to suppress his confession under Edwards.

In opposing Grueninger's petition, the Commonwealth produced an affidavit from Clower (the "Clower Affidavit") that described the video of the first interaction between Klisz and Grueninger on the day of Grueninger's arrest. According to Clower, "Detective Kliz [sic] did read the defendant his Miranda warning, and Grueninger said 'These are felonies, I need an Attorney.'" J.A. 342. Clower also described the circumstances that produced Grueninger's confession during the second interview with Klisz: "On a subsequent day Detective Kliz [sic] returned with new warrants. At that time, upon being served,

7

Mr. Grueninger volunteered statements that were later used in his conviction." Id.

The Circuit Court held that Grueninger was not entitled to relief on any of his claims and dismissed his petition. The court determined that Grueninger procedurally defaulted his substantive Edwards claim by failing to litigate it at trial or on direct appeal. And the court rejected Grueninger's argument that this failure itself constituted ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). According to the court, Grueninger's statements to Klisz were spontaneous or "voluntary" rather than the product of "interrogation": "The mere serving of the[] warrants [by Klisz] was not designed to provoke incriminating statements from the petitioner and was not an interrogation." J.A. 347. It followed, the court held, that the statements would not have been suppressed under Edwards — which applies only when a suspect is interrogated — and therefore that Clower's failure to move for suppression was neither deficient performance nor prejudicial under Strickland.

Grueninger appealed the dismissal of his state habeas petition to the Supreme Court of Virginia. The Supreme Court summarily found that "there [was] no reversible error in the

8

judgment complained of" and refused the petition for appeal. J.A. 354.

## C.

On June 12, 2013, Grueninger filed a federal habeas petition under 28 U.S.C. § 2254 in the Eastern District of Virginia,[2] alleging largely the same claims as in his state habeas petition. The district court agreed with the Circuit Court that Grueninger's substantive Edwards claim was procedurally defaulted. As to ineffective assistance in connection with the Edwards claim, the district court also agreed that trial counsel "reasonably eschewed moving to suppress," quoting Clower's statement in his affidavit that any such motion would have been "baseless." J.A. 41. In the alternative, the district court held, even if a motion to suppress had been made and granted, the resulting exclusion of Grueninger's confession would not have led to a different outcome at trial: "Even without Grueninger's statement to Detective Klisz, overwhelming direct and circumstantial evidence of Grueninger's guilt existed." Id. The district court rejected the remainder of Grueninger's claims, dismissed

---

[2] Grueninger originally petitioned for federal habeas relief in the Western District of Virginia. The case was transferred to the Eastern District of Virginia and Grueninger filed a new habeas petition there.

Grueninger's petition, and denied a certificate of appealability.

Grueninger filed a timely appeal with this court. We granted a partial certificate of appealability as to the following issues: "(1) Whether trial counsel was ineffective in failing to seek pretrial suppression of Grueninger's [inculpatory] statement under Edwards v. Arizona, 451 U.S. 477 (1981)," and "(2) if so, whether counsel's ineffectiveness demonstrates cause and prejudice to excuse Grueninger's procedural default of his claim that his statements were unconstitutionally obtained in violation of Edwards."

## II.

We review the district court's denial of a habeas petition de novo. MacDonald v. Moose, 710 F.3d 154, 159 (4th Cir. 2013). Our analysis is circumscribed, however, by the amendments to 28 U.S.C. § 2254 enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

Under 28 U.S.C. § 2254(d), "the availability of federal habeas relief is limited with respect to claims previously 'adjudicated on the merits' in state-court proceedings." Harrington v. Richter, 562 U.S. 86, 92 (2011). A federal habeas court may not grant relief on such claims unless it concludes

that the state court's merits determination "was contrary to, or involved an unreasonable application of, clearly established Federal law" as set forth by the Supreme Court, 28 U.S.C. § 2254(d)(1), or rested on "an unreasonable determination of the facts" in light of the evidentiary record before the state court, id. § 2254(d)(2). And a state court's factual findings must be presumed correct, absent rebuttal by the petitioner by clear and convincing evidence. Id. § 2254(e).

As the Supreme Court has made clear, § 2254(d) permits federal habeas relief where a state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the prisoner's case. Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). But that is a high threshold, and only an "objectively unreasonable" determination by a state court will warrant federal habeas relief. Id. at 520–21; see also Tice v. Johnson, 647 F.3d 87, 108 (4th Cir. 2011).

### III.

#### A.

Grueninger's primary argument is that his counsel was ineffective for failing to move to suppress his confession. We

11

begin by setting out briefly the legal principles that govern this claim.

In Edwards v. Arizona, the Supreme Court held that once a suspect invokes his right to counsel under Miranda, he is "not subject to further interrogation" by the police, unless — in an exception not relevant here — the suspect himself initiates renewed communication with the police. 451 U.S. at 484–85. If the police do interrogate a suspect in custody after he asserts his right to counsel, then any statements they elicit are per se inadmissible, even if the suspect is again advised of his Miranda rights. Id. at 487. To establish an Edwards violation, a petitioner must show both that he clearly and "unambiguously" invoked his right to counsel, Davis v. United States, 512 U.S. 452, 459 (1994); Edwards, 451 U.S. at 485 (police may not interrogate a suspect who has "clearly asserted" his Miranda right to counsel), and also that the police subsequently "interrogated" him, Edwards, 451 U.S. at 484 (prohibiting "further police-initiated custodial interrogation" after invocation); see Rhode Island v. Innis, 446 U.S. 291, 300–01 (1980) ("Miranda safeguards come into play" when police engage in "interrogation" of a suspect in custody).

Claims of ineffective assistance of counsel are evaluated under the framework set out in Strickland v. Washington. To

12

prevail, a petitioner must show that his lawyer rendered constitutionally deficient performance, meaning that "the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. Under Strickland, courts are to "take a highly deferential look at counsel's performance," so that review of a state-court finding on deficiency becomes "doubly deferential" under AEDPA. Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (citations and internal quotation marks omitted). And a petitioner also must show prejudice from counsel's deficiencies, meaning "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

We have further refined the Strickland analysis as it applies in cases, like this one, where an ineffectiveness claim is based on counsel's failure to file a motion to suppress. Under the deficient performance prong of Strickland, it is enough to call into question counsel's performance that an unfiled motion would have had "some substance." Tice, 647 F.3d at 104. And the prejudice prong in such cases has two distinct components, with the petitioner required to show both (1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would

13

have affected the outcome of his trial.  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Tice, 647 F.3d at 104, 107–08.

## B.

In applying § 2254(d) in this case, we "look through" the Supreme Court of Virginia's summary refusal to hear Grueninger's appeal and evaluate the Circuit Court's reasoned decision on Grueninger's claim.  See Brumfield v. Cain, 135 S. Ct. 2269, 2276 (2015) (applying "look through" doctrine to evaluate state trial court's reasoned decision denying claim on the merits where state supreme court summarily denied petition for review); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (federal habeas courts should presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").  In other words, the state-court decision that we review for "objective reasonableness" under AEDPA's highly deferential standard is that of the Hanover Circuit Court, applying the Edwards interrogation requirement to deny Grueninger's ineffective assistance claim.

The Commonwealth appears to argue for a different approach. Under Harrington v. Richter, an unexplained state supreme court judgment may be disturbed under § 2254(d) only if there is "no reasonable basis for the state court to deny relief."  562 U.S.

14

at 98 (emphasis added). So here, the Commonwealth suggests, where the Supreme Court of Virginia summarily refused to hear Grueninger's appeal, Grueninger can prevail only by showing that any hypothetical ground for denying his claim, whether or not addressed by the Circuit Court, would be objectively unreasonable.[3]

We disagree. Richter addressed a situation in which a state habeas petition was presented directly to a state supreme court as an original petition and then denied by that court in a one-sentence summary order, so that there was no reasoned decision by any state court. 562 U.S. at 96-97. In those circumstances, the Court held, where there is no indication of the state court's reasoning, a federal habeas petitioner must show that there was "no reasonable basis for the state court to deny relief," id. at 98, and a federal habeas court must defer under AEDPA to any reasonable "arguments or theories . . . [that] could have supported[] the state court's decision," id. at 102 (emphasis added).

---

[3] To be sure, though this appears to be the premise of the Commonwealth's brief, the issue is not clearly addressed. Nor, for that matter, does Grueninger plainly confront this issue in his briefs. At oral argument, however, both parties clarified their respective positions, and we address them here.

15

But "[b]y its terms," Richter is limited to cases "'where a state court's decision is unaccompanied by an explanation.'" Woolley v. Rednour, 702 F.3d 411, 422 (7th Cir. 2012) (alteration omitted) (quoting Richter, 562 U.S. at 98). The situation is different when there is a state-court decision explaining the rejection of a claim. Id. When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review, then under Ylst, a federal habeas court is to "look through" the unexplained affirmance to examine the "last reasoned decision" on the claim, assuming that the summary appellate decision rests on the same ground. 501 U.S. at 803–04, 806. "The maxim is that silence implies consent, not the opposite — and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below." Id. at 804. So in our case, we may assume that the Supreme Court of Virginia has endorsed the reasoning of the Circuit Court in denying Grueninger's claim, and it is that reasoning that we are to evaluate against the deferential standards of § 2254(d).

We recognize that the relationship between Richter and Ylst has generated some questions in the courts of appeals, though many courts have continued to apply Ylst even after the later-

16

decided Richter, "looking through" summary state-court affirmances and affording AEDPA deference only to the grounds on which the last reasoned state-court decision rests. See Cannedy v. Adams, 706 F.3d 1148, 1158 (9th Cir. 2013) (concluding that if the Supreme Court had intended to disrupt "common practice" under Ylst when it decided Richter, it would have made that intention clear).[4] Our court has not passed directly on the issue, though we have questioned whether Ylst, which was concerned with determining whether a state court had refused relief on state procedural grounds, applies "where a state procedural bar is not at issue" and the last reasoned state-court decision is on the merits. Tice, 647 F.3d at 106.[5]

---

[4] Other cases holding that Ylst survives Richter and continuing to apply the "look through" doctrine to summary appellate affirmances include Barton v. Warden, S. Ohio Corr. Facility, 786 F.3d 450, 460, 462 (6th Cir. 2015); Lee v. Corsini, 777 F.3d 46, 54 (1st Cir. 2015); Woodfox v. Cain, 772 F.3d 358, 369–70 (5th Cir. 2014); and Eichwedel v. Chandler, 696 F.3d 660, 671–72 (7th Cir. 2012). The Eleventh Circuit appears to have taken a contrary view. Hittson v. GDCP Warden, 759 F.3d 1210, 1232 n.25 (11th Cir. 2014).

[5] Cases applying Ylst where there is no procedural bar at issue and the last reasoned state-court decision addresses a claim's merits include Cannedy, 706 F.3d at 1158; Clements v. Clarke, 592 F.3d 45, 52 (1st Cir. 2010); Bond v. Beard, 539 F.3d 256, 289–90 (3d Cir. 2008); Mark v. Ault, 498 F.3d 775, 782–83 (8th Cir. 2007); and McFowler v. Jaimet, 349 F.3d 436, 446 (7th Cir. 2003).

17

But to the extent there has been any doubt about the scope and continued vitality of Ylst after Richter, we think the Supreme Court clarified the matter in its decision of this year in Brumfield, when it applied Ylst on federal habeas review to "look through" a state supreme court's summary denial of a petition for review to evaluate a state trial court's reasoned decision denying a petitioner's claim on the merits. 135 S. Ct. at 2276. Deference under 28 U.S.C. § 2254(d), the Court explained, extended only to the points actually determined by the state trial court in its reasoned decision; the Richter rule requiring deference to "hypothetical reasons [a] state court might have given for rejecting [a] federal claim" is limited to cases in which no state court has issued an opinion giving reasons for the denial of relief. Id. at 2282–83.[6]

In light of Brumfield, it is clear that the decision we are to evaluate under § 2254(d) is the determination of the Hanover Circuit Court that Grueninger could not make out an Edwards violation and that his counsel therefore was not ineffective for

_____

[6] On this point, the Supreme Court appears to have been unanimous. While the dissent in Brumfield disagreed with the majority's assessment of the state trial court decision under § 2254(d), it did not take issue with application of the "look through" doctrine, and itself applied § 2254(d) only to the reasoned decision of the trial court. 135 S. Ct. at 2289–90 (Thomas, J., dissenting).

18

failing to move to suppress his confession.    It is to that determination that we now turn.

## C.

In rejecting Grueninger's ineffective assistance claim, the Circuit Court reasoned as follows:

> The Court finds reasonable counsel's decision not to file a suppression motion, where petitioner made voluntary statements in response to being served with warrants one day in jail.  (Exhibit 1; Affidavit of Michael Clower).  The mere serving of these warrants was not designed to provoke incriminating statements from the petitioner and was not an interrogation, thus counsel correctly determined that the statements would not have been suppressed.  The Court dismisses this claim for failure to establish deficient performance or prejudice. Strickland, 466 U.S. 668.

J.A. 347.  With due respect to the state court, we find that determination to be objectively unreasonable under § 2254(d).

First, there is no question (and indeed, the Commonwealth does not dispute) that when Klisz visited Grueninger in jail on March 16 to serve new arrest warrants, he questioned Grueninger about the charges against him.  Klisz's trial testimony leaves no room for doubt on this point:  When the prosecutor asks, "[A]fter you read him Miranda, did he answer any of your questions?" Klisz replies, "He did. . . . I asked him questions and he talked about — we talked about the case," and then, just a few moments later, elaborates, "I asked him about the charges, they were all of a sexual nature."  J.A. 87-88 (emphasis added).

19

Second, it is equally plain (and again, the Commonwealth concedes) that the asking of questions about the substance of a case constitutes "interrogation" for Edwards purposes. See Innis, 446 U.S. at 300-01. The difficult issue when it comes to defining "interrogation" is not whether "express questioning" counts — it does — but whether police conduct short of direct questioning might also be covered. In Innis, the Supreme Court answered that question in the affirmative, holding that "interrogation" includes not only "express questioning" but also its "functional equivalent" — "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. (footnotes omitted). The Circuit Court appears to have held that Klisz's serving of a new arrest warrant on Grueninger did not rise to the level of "interrogation" under this alternative definition, as it was not "designed to provoke incriminating statements from the petitioner." J.A. 347. We need not quibble here with the Circuit Court's substitution of a subjective standard ("designed to" elicit) for Innis's objective standard ("should know are reasonably likely to" elicit), and may assume that the state court correctly, or at least not unreasonably under § 2254(d), determined that confronting Grueninger with the new arrest warrant did not itself constitute "interrogation."

20

But that is beside the point, because under any reading of the Supreme Court's established precedent, Klisz's "express questioning" of Grueninger about the charges against him surely does qualify as "interrogation" under Edwards. Innis, 446 U.S. at 300–02.

The Circuit Court rejected Grueninger's ineffective assistance claim on the ground that because there was no interrogation, Grueninger's statements would not have been suppressed even if his counsel had moved to exclude them under Edwards. J.A. 347 ("[There] was not an interrogation, thus counsel correctly determined that the statements would not have been suppressed. The Court dismisses this claim for failure to establish deficient performance or prejudice."). The Commonwealth does not defend that holding, and we believe the Circuit Court's decision "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States" under § 2254(d)(1).[7]

---

[7] Though we hesitate to read too far between the lines of the Circuit Court decision, we recognize that it may have been informed by the Clower Affidavit's assertion that "upon being served [with the new arrest warrant by Klisz], Mr. Grueninger volunteered statements that were later used in his conviction," J.A. 342 (emphasis added). Given the context, we assume that Clower was using "volunteered" to signify only that Grueninger's statements were uncoerced and came after Miranda warnings, not that they were spontaneous utterances unrelated to questioning. But to the extent the Circuit Court ruling rests on a factual

21

**D.**

The Commonwealth urges us to affirm the dismissal of Grueninger's ineffective assistance claim on two alternative grounds. First, the Commonwealth argues, the Circuit Court determination that any Edwards motion to suppress would have been denied turns out to be correct, not because there was no interrogation, but because Grueninger did not unequivocally invoke his Miranda right to counsel. Second, the Commonwealth contends, the district court properly found that even had Grueninger's confession been suppressed, there was no reasonable probability that the result of his trial would have been different, and so no Strickland prejudice. Because the state court did not reach these questions, we consider them de novo. See Brumfield, 135 S. Ct. at 2282 (where state trial court does not make finding on particular component of claim, there is "no determination on that point to which a federal court must defer" under § 2254(d)); Wiggins, 539 U.S. at 534 (no AEDPA deference in evaluating prong of Strickland analysis that state court has not reached); see also Early v. Packer, 537 U.S. 3, 8 (2002)

---

finding that Klisz did not question Grueninger, we conclude that it is "based on an unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), in light of Klisz's pellucid trial testimony.

22

(per curiam) (habeas relief may be granted if either "the reasoning [or] the result of the state-court decision" is objectively unreasonable under 2254(d)).[8]

### 1.

The Commonwealth's primary argument is that Grueninger can establish neither deficient performance nor prejudice under Strickland because any suppression motion would have been denied. Relying on Clower's representations in his affidavit, the Commonwealth insists that Clower made a deliberate tactical decision to forgo a suppression motion under Edwards, predicated on his judgment that such a motion would be "baseless" because Grueninger did not use "the terminology needed to evoke [sic] his Miranda rights" when he said, "I need an [a]ttorney." Clower Affidavit, J.A. 342–43. We disagree.

---

[8] We do not understand the Commonwealth to argue against this application of Brumfield and Wiggins. Once it is established that the state-court decision we review under § 2254(d) is that of the Circuit Court, it follows that deference under § 2254(d) is owed only to the actual determinations of that court and not those that it hypothetically might have made; that is why Ylst's "look through" doctrine matters in the first place. See Brumfield, 135 S. Ct. at 2282–83 (contrasting Wiggins and Richter). And if there were any question as to whether Wiggins survives Richter, we think it was resolved by the Supreme Court's recent decision in Brumfield, applying Wiggins to review de novo one component of a claim under Atkins v. Virginia, 536 U.S. 304 (2002), because it was not addressed by the last reasoned state-court decision. 135 S. Ct. at 2282.

23

We recognize that review of counsel's performance under Strickland is deferential, respecting the "wide latitude counsel must have in making tactical decisions." Strickland, 466 U.S. at 689. But on this record, it is hard to discern any tactics at all. Clower did not, in fact, forgo an Edwards objection; he raised the Edwards issue on the first day of trial. The only thing forgone was the opportunity to make his Edwards argument in a timely manner and in writing, as required by local rules — or, once that opportunity was lost, to accept the invitation of the trial judge to object at trial when the confession was introduced. A strategic judgment that "baseless motions" should be avoided, see Clower Affidavit, J.A. 343, may be well-founded, but it cannot explain a decision to raise a "baseless" claim only in an improper manner that ensures its denial. See Tice, 647 F.3d at 105–06 (finding deficient performance on habeas review and declining "to engage in after-the-fact rationalization of a litigation strategy that almost certainly was never contemplated"); Richards v. Quarterman, 566 F.3d 553, 570 (5th Cir. 2009) (finding deficient performance on federal habeas review where counsel's "proffered explanations" for failure to seek admission of evidence "ma[de] no sense" and failed to "explain the basis" for her actions).

Regardless, any determination by Clower that he could not defend a suppression motion because he and the prosecutor "agreed that [Grueninger] did not evoke [sic] his Miranda rights," Clower Affidavit, J.A. 342, appears to rest less on informed legal judgment than on a legal misapprehension — which of course will not excuse deficient performance, see Winston v. Pearson, 683 F.3d 489, 504–05 (4th Cir. 2012). As noted above, Edwards protections are triggered only if a suspect "unambiguously" invokes his right to counsel under Miranda, by "articulat[ing] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis, 512 U.S. at 459. We think that standard was met when Grueninger, in response to being advised of his Miranda right to counsel, said, "These are felonies, I need an [a]ttorney." J.A. 342.

We of course acknowledge, as the Commonwealth argues, that "merely mentioning an attorney" is not enough to invoke under Davis. But Grueninger's statement — "I need an attorney" — contains none of the hedges or equivocations that might make it unclear to a reasonable officer whether he was requesting counsel. Cf., e.g., Mueller v. Angelone, 181 F.3d 557, 573–74 (4th Cir. 1999) ("Do you think I need an attorney here?" does

25

not unambiguously invoke); Johnson v. Harkleroad, 104 F. App'x 858, 867 (4th Cir. 2004) (unpublished) ("maybe I should stop talking and get a lawyer" does not unambiguously invoke). Nor is there anything about the context that might render Grueninger's statement ambiguous. This is not a case, for instance, in which a suspect says "I need a lawyer" mid-interview, and then immediately continues to answer questions, cf. United States v. Eligwe, 456 F. App'x 196, 197–98 (4th Cir. 2011) (unpublished), so that it may be unclear whether he desires legal assistance in connection with the questioning itself. Here, by contrast, Grueninger said "I need an attorney" in response to being read his Miranda rights, leaving no doubt that he is referring to the Miranda right to have counsel present during questioning. And indeed, that a "reasonable police officer in the circumstances" would so understand Grueninger's statement, see Davis, 512 U.S. at 459, appears to be confirmed by the fact that Klisz himself understood it that way, asking no further questions once Grueninger announced his need for a lawyer.

In considering whether counsel's failure to move to suppress a confession was deficient under Strickland, we ask whether a motion to suppress would have had "some substance." Tice, 647 F.3d at 104. And in connection with Strickland's

26

prejudice prong, we evaluate whether the underlying "claim is meritorious," Kimmelman, 477 U.S. at 375, so that a motion to suppress likely would have been granted.[9]  Because, as discussed above, Grueninger was interrogated by the police after invoking his Miranda right to counsel, we conclude that an Edwards motion to suppress not only would have had "some substance," but also would have been meritorious and likely granted, but for counsel's deficient performance.[10]

---

[9] We note that courts have differed slightly in their formulation of this standard.  See, e.g., Ray v. United States, 721 F.3d 758, 763 (6th Cir. 2013) (must be "reasonably likely" that a court would grant the motion to suppress); Styers v. Schriro, 547 F.3d 1026, 1030 (9th Cir. 2008) (petitioner must show a "reasonable probability that the motion would have been granted"); Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999) (petitioner must show that "it is reasonable that the trial court would have granted [the unfiled motion] as meritorious"). In Tice, we had no occasion to parse the standard so finely, concluding simply that "had the motion to suppress been made, the trial court would have had little choice but to grant it." 647 F.3d at 107.  Here, too, the matter is clear enough that we need not bear down on the precise formulation.

[10] We cannot agree with the Commonwealth's novel argument that we should defer to the Circuit Court ruling that the statements would not have been suppressed because the judge who made that determination on collateral review is the same judge who presided over Grueninger's trial, making him "uniquely qualified" to predict whether he himself would have granted an Edwards motion.  Response Br. at 7.  The question under Strickland and Kimmelman is whether an unfiled motion to suppress would have been "meritorious" as an objective matter, Kimmelman, 477 U.S. at 375, not whether a particular judge — based on argument, we note, by putatively deficient counsel — might nevertheless have denied it.  Cf. Tice, 647 F.3d at 105–06

27

**2.**

Finally, the Commonwealth argues that the district court correctly held that even if a motion to suppress would have been granted, there is no "reasonable probability" that exclusion of Grueninger's confession would have affected the trial's outcome, as is necessary to complete the prejudice showing under Kimmelman and Strickland. See Kimmelman, 477 U.S. at 375. We review the district court's holding on this question de novo, see Washington v. Murray, 4 F.3d 1285, 1288 (4th Cir. 1993) (holdings about deficient performance and prejudice under Strickland are mixed questions of law and fact subject to de novo review); Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (de novo review where district court habeas decision is based exclusively on state-court record), and come to a different conclusion.

As we have recognized, "a confession can have . . . a devastating and pervasive effect" on the outcome of a trial. United States v. Ince, 21 F.3d 576, 583 (4th Cir. 1994); see also Arizona v. Fulminante, 499 U.S. 279, 296 (1991) ("A confession is like no other evidence."). This is a case in

(performance and prejudice prongs of Strickland are not pure questions of fact on which trial court is presumed correct).

28

point.  Grueninger's statements, introduced at trial by way of

Klisz's testimony, were detailed and deeply disturbing.  As

Klisz recounted:

> I asked him about the charges, they were all of a
> sexual nature.  During that time, he admitted to
> performing oral sex on [his daughter] on at least two
> occasions.  . . . [H]e said that [his daughter] had
> come to him and wanted him to perform oral sex on her
> because she was curious.  He also said that
> ejaculating on his daughter during those same
> incidents was part of what was going on.  He said he
> had [his daughter] clean herself up — clean herself up
> afterwards.  He also said that he had shaved his
> daughter's pubic hair because she wanted him to.  He
> also said that he regularly bathed naked with [his
> daughter], had been doing it for a long time since she
> was little.  I asked him if he had touched his
> daughter's vagina with his finger.  He denied that he
> had, but he said that he had helped her with a yeast
> infection suppository because it kept slipping out of
> her fingers, so he put it in her vagina for her.

J.A. 88.  That testimony almost certainly would have left an

indelible impression on the court as it conducted its bench

trial.[11]

The independent evidence against Grueninger, on the other

hand, while substantial, was not so overwhelming that we can be

confident Grueninger would have been convicted of sexual abuse

---

[11] Our objective assessment of the likely prejudicial effect
of Grueninger's confession is, we note, consistent with the
trial court's own understanding of the confession's importance.
As that court explained, summing up the evidence at the
conclusion of Grueninger's trial, "the whole case shifts into a
different perspective" if Klisz's testimony is credited and
Grueninger's confession taken into account.  J.A. 305.

even without his confession. In addition to the confession, the Commonwealth relied at trial chiefly on the testimony of Grueninger's daughter, the only witness to provide direct evidence on the abuse charges. Her testimony was damning, charging Grueninger with "putting his parts all over" hers and touching her in a sexual way "whenever he got the chance." J.A. 112–13, 124. But the defense was able to raise questions about the reliability of that testimony. On cross-examination, for instance, Grueninger's daughter admitted that she had denied earlier that Grueninger had abused her and then accused him only after they had a fight, and that she had vivid sexual fantasies and found it "hard to tell what's fantasy and what's real," J.A. 139. And the Commonwealth's own expert in electronic evidence contradicted the daughter's account that Grueninger had shown her pornography on her computer.[12]

None of the Commonwealth's other three witnesses could testify directly that Grueninger had sexually abused his daughter. Testimony of a nurse practitioner and a Child Protective Services worker established that the daughter had

---

[12] Though the trial court ultimately credited the daughter's testimony, it recognized that it was less than "airtight," J.A. 306, and that the court was evaluating the testimony in light of Grueninger's confession, which was the "given on which to go forward," J.A. 305.

reported sexual abuse and showed physical evidence consistent with sexual trauma, but did not tie Grueninger himself to any abuse or trauma aside from his daughter's statements to them. Grueninger's wife was able to testify to particular acts by Grueninger, but that testimony was limited to having seen Grueninger bathe with their daughter and shave her pubic hair. Grueninger's wife also read letters from Grueninger apologizing for the harm he had caused their daughter and asking that they recant, but the letters did not mention any specific acts, and Grueninger claimed at trial that he had been apologizing for his role in his daughter's emotional breakdown and not for any sexual abuse.

We do not mean to suggest that the Commonwealth's independent evidence was insubstantial, or that it could not have supported a guilty verdict in the absence of Grueninger's confession. But that is not the standard we are to apply. See Strickland, 466 U.S. at 693 (petitioner need not show that counsel's deficiency "more likely than not altered the outcome in the case"). Instead, the question is whether there is a "reasonable probability" of a different outcome at trial had Grueninger's confession been excluded. See id. at 694. Given the centrality of the confession to this case, we cannot be confident that there is no "reasonable probability" that

31

Grueninger's confession affected the outcome of his trial on the sexual abuse charges.

We reach a different judgment, however, with respect to the child pornography charges on which Grueninger also was convicted. As to these charges, Grueninger's statements to Klisz were of very limited relevance. The entirety of Klisz's testimony on this point was that when asked about his computer use, Grueninger said "the main computer he used in the house was the laptop." J.A. 88. But whether or not Grueninger used the laptop, the Commonwealth presented overwhelming evidence tying him to a thumb drive that contained photographs and videos of child pornography, found in Grueninger's own dresser drawer along with adult pornographic DVDs, a sex vibrator, and personal lubricant. And even as to the laptop, with or without Grueninger's confession, the Commonwealth established at trial that pornographic images of children were found on the laptop in a folder under a partition labeled "Eric," Grueninger's first name. In light of this compelling independent evidence and the marginal relevance of Grueninger's statement to Klisz, we see no reasonable probability that admission of Grueninger's confession altered the outcome of his trial on the child pornography charges.

32

In sum, we find that with respect to his convictions on sexual abuse charges, Grueninger has demonstrated ineffective assistance of counsel under both the deficient performance and prejudice prongs of Strickland, and we reverse the district court's dismissal of his habeas petition as to those convictions. We remand with instructions that the district court issue Grueninger a writ of habeas corpus as to the sexual abuse charges unless the Commonwealth endeavors, within a reasonable period of time, to prosecute him in a new trial on those counts without utilizing the confession. With respect to his convictions on the child pornography charges, we find that Grueninger has not shown a reasonable probability that his confession altered the outcome of his trial, as required to demonstrate prejudice under Strickland, and we therefore affirm the district court order in that respect.[13]

---

[13] For the same reason, we hold that Grueninger cannot show "prejudice" sufficient to excuse the procedural default of his substantive Edwards claim as it pertains to the child pornography charges. To obtain federal habeas review of a procedurally defaulted claim, a petitioner must show both "cause for the default and actual prejudice" from a violation of federal law. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Though the "[c]onstitutionally deficient performance" of Grueninger's counsel may constitute "cause" under this standard, see Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003), Grueninger cannot demonstrate the requisite "prejudice," as discussed above, and so his stand-alone Edwards claim does not provide an alternative basis for reversing his child pornography convictions. And because Grueninger prevails on his Strickland

33

**IV.**

For the foregoing reasons the judgment of the district court is

AFFIRMED IN PART,
REVERSED IN PART,
AND REMANDED.

---

claim as to the sexual abuse charges, there is no need to address those charges further.