**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-6222**

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

   v.

JAMES RODREIQUAS PRESSLEY, a/k/a Bubba,

       Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Terrence W. Boyle, District Judge.  (5:12-cr-00284-BO-1; 5:17-cv-00396-BO)

Argued:  December 9, 2020                    Decided:  March 11, 2021

Before KEENAN and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Vacated and remanded, with instructions by published opinion.  Judge Keenan wrote the opinion, in which Judge Richardson and Senior Judge Traxler joined.

**ARGUED:**  Samuel F. Callahan, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant.  Banumathi Rangarajan, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Allon Kedem, ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., for Appellant. Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Evan M. Rikhye, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

James Pressley was convicted by a jury of thirteen counts resulting from his participation in a cocaine distribution conspiracy and related financial crimes. In his present motion brought under 28 U.S.C. § 2255, Pressley alleges that he repeatedly asked his trial counsel to file a motion to suppress certain incriminating statements he made to law enforcement officers before his arrest, and that counsel rendered ineffective assistance by failing to do so. According to Pressley, the officers subjected him to custodial interrogation without providing him the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), and the government relied heavily on his confession in its presentation to the jury. The district court denied Pressley's motion without an evidentiary hearing.

Upon our review, we conclude that the record is unclear regarding what facts counsel knew before trial, and whether his decision not to file a suppression motion was an objectively reasonable choice based on trial strategy. The record also contains disputed facts on the issue whether Pressley was subject to custodial interrogation, thereby triggering the protections of *Miranda*. We therefore remand this case to the district court to hold an evidentiary hearing, including testimony by trial counsel.

I.

In the summer of 2012, Pressley, Larry Taylor, and others were the subjects of a narcotics investigation conducted by a Bureau of Alcohol, Tobacco and Firearms task force. After informants had completed multiple controlled purchases of drugs from Pressley, task force members Harnett County Lieutenant Joshua Christensen and Internal

Revenue Service Special Agent Thomas Beers sought to induce Pressley to cooperate in their investigation of Taylor.

Christensen and Beers interrogated Pressley in Christensen's vehicle, prompting Pressley to make the incriminating statements at issue in this case. Describing the interrogation at trial, Christensen testified that he and Beers approached Pressley as Pressley was walking from his home toward his car. Christensen lowered the window of his vehicle and displayed his credentials. Christensen informed Pressley that he was not under arrest, but asked him to follow the officers in Pressley's own vehicle. Pressley agreed, and followed the officers to a church parking lot. According to Christensen, he chose the secluded location to ensure that the interaction would not be observed by others and compromise Pressley's potential cooperation.

Christensen testified that upon arrival at the church, Pressley got out of his vehicle. Christensen reintroduced himself, reiterated that Pressley was not under arrest, and stated that no warrants against him were outstanding and that the officers needed to talk to him. Agent Beers sat in the back seat of the officers' vehicle, Christensen sat in the driver's seat, and Pressley sat in the front passenger's seat. Neither officer gave Pressley *Miranda* warnings during the one hour and forty-five-minute interview.

To encourage Pressley's cooperation, Christensen told Pressley that law enforcement officers could obtain search warrants for his home and that Pressley was facing serious federal charges. After the officers shared the evidence they had against Pressley and their hope that he would cooperate, Pressley made numerous inculpatory

3

statements regarding his involvement in drug distribution activities, his co-conspirators, and the purchases he made with drug proceeds.

In his Section 2255 motion and accompanying affidavit, Pressley disputes the version of events that Christensen related at trial regarding this interview. Notably, Pressley claims that when Christensen first spoke to him, Christensen told Pressley not to use his cell phone, and stated that, if Pressley did not proceed to the church parking lot as instructed, he would be intercepted by an undercover officer. Pressley also avers that several unmarked police vehicles followed him to the church and surrounded his vehicle in the parking lot. According to Pressley, Christensen displayed his weapon during the interview, and Beers threatened to "turn . . . inside out" the homes of Pressley's family members if he did not cooperate. Pressley maintains that, given these facts and circumstances, he did not feel free to terminate the interview and leave.

During the jury trial, Christensen relayed Pressley's confession in detail, and Pressley did not testify in his own defense. The government also relied extensively on Pressley's admissions as a centerpiece of its presentation to the jury. The jury returned a verdict of guilty on all thirteen counts, including conspiracy to distribute and possess crack cocaine, distribution of crack cocaine, conspiracy to launder money, and other financial crimes. The district court imposed a sentence of life imprisonment, and, on direct appeal, we affirmed Pressley's convictions and sentence. *United States v. Pressley*, 654 F. App'x 591 (4th Cir. 2016).

In the present Section 2255 motion, Pressley contends that trial counsel rendered ineffective assistance by failing to file a motion to suppress Pressley's incriminating

4

statements, which Pressley contends were obtained in violation of *Miranda*. Pressley claims that he asked counsel on multiple occasions before trial to file such a motion, but counsel never complied with his request. The district court denied Pressley's motion without holding an evidentiary hearing. The court entered summary judgment in favor of the government, concluding that: (1) Pressley admitted that he made the incriminating statements after the government offered potential benefits in exchange for Pressley's cooperation; (2) Pressley was told that he was not under arrest; and (3) Pressley voluntarily got into the car with the officers. Pressley appealed from the denial of his Section 2255 motion, and we granted him a certificate of appealability.

## II.

We review de novo the district court's denial of a Section 2255 motion. *United States v. Palacios*, 982 F.3d 920, 923 (4th Cir. 2020). When the district court denies such a motion without an evidentiary hearing, we construe the facts in the light most favorable to the movant. *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

### A.

We begin by outlining the legal principles governing our review of Pressley's ineffective assistance of counsel claim. In evaluating this claim, we apply the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a criminal defendant must show that his counsel provided constitutionally deficient performance, "meaning that the identified acts or omissions were outside the wide range of professionally competent assistance" (the performance prong). *Grueninger v. Dir., Va.*

5

*Dep't of Corr.*, 813 F.3d 517, 524 (4th Cir. 2016) (quoting *Strickland*, 466 U.S. at 690) (internal quotation marks omitted). We accord broad deference to counsel's choices in recognition of the "wide latitude counsel must have in making tactical decisions." *Id.* at 529 (quoting *Strickland*, 466 U.S. at 689). To succeed on an ineffective assistance claim, the defendant also must show that he was prejudiced by counsel's deficient performance, namely, that there is a reasonable probability that the outcome of the trial would have been different absent counsel's error (the prejudice prong). *Id.* at 524.

When a person claims ineffective assistance based on counsel's failure to file a suppression motion, we apply a "refined" version of the *Strickland* analysis. *Id.* With respect to the performance prong, we ask whether the "unfiled motion would have had 'some substance.'" *Id.* at 524-25 (citing *Tice v. Johnson*, 647 F.3d 87, 104 (4th Cir. 2011)). If the motion would have had some substance, then we ask whether reasonable strategic reasons warranted not filing the motion. *See id*. at 529; *Tice*, 647 F.3d at 104-05. To satisfy the prejudice prong, the defendant must show that: (1) "the [suppression] motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial." *Grueninger*, 813 F.3d at 525.

A defendant is entitled to suppression of his incriminating statements if law enforcement officers failed to provide *Miranda* warnings during a "custodial interrogation." *See United States v. Giddins*, 858 F.3d 870, 879 (4th Cir. 2017). There is no dispute in the present case that Pressley was interrogated. Accordingly, our analysis is limited to whether Pressley was "in custody" at the time of his interrogation.

6

A person "is in custody when, under the totality of the circumstances, [his] freedom from action is curtailed to a degree associated with formal arrest," even if he is not formally placed under arrest. *United States v. Colonna*, 511 F.3d 431, 435 (4th Cir. 2007) (internal quotation marks and citation omitted). We apply an objective inquiry to the issue of custody, asking "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Hashime*, 734 F.3d 278, 282-83 (4th Cir. 2013) (citation, internal quotation marks, and alterations omitted). Relevant factors include "the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant." *Id.* at 283 (citation omitted). Isolation and separation from family members, as well as physical restrictions, also may be relevant and weigh in favor of a finding of custody. *Id.* With these legal principles in mind, we turn to consider Pressley's arguments.

B.

As noted above, Pressley argues that his trial counsel provided ineffective assistance by failing to file a motion to suppress Pressley's statements, despite his multiple requests that counsel do so. Relying on a version of facts that contradicts Christensen's trial testimony, Pressley asserts that he was in custody at the time of his interrogation but did not receive the required *Miranda* warnings. Thus, in Pressley's view, a suppression motion had "some substance" and counsel was obligated to file the motion.

In response, the government contends that counsel "made a conscious and entirely reasonable" decision not to seek suppression of Pressley's statements, given the information Pressley provided to counsel at the time and the risks Pressley faced by testifying at a suppression hearing. In the government's view, the record is "undisputed" regarding the strategic nature of counsel's decision and, thus, counsel's performance is "virtually unchallengeable." We disagree with the government's argument.

As discussed above, counsel can be held deficient for failing to file a suppression motion only if such a motion had "some substance." *Grueninger*, 813 F.3d at 525 (citation omitted). Accepting Pressley's allegations in his Section 2255 motion as true, as we must in the absence of an evidentiary hearing, *see Poindexter*, 492 F.3d at 267, a suppression motion based on such facts plainly would have had "some substance."

Most notably, Pressley claims that officers threatened to intercept him if he did not proceed to the secluded parking lot as instructed, and multiple officers followed him in their vehicles. Once at the parking lot, Pressley asserts that: (1) several unmarked vehicles surrounded him; (2) the officers searched him and his vehicle; (3) Christensen displayed his firearm; and (4) Beers threatened to ransack the homes of Pressley's family members if he did not cooperate. These circumstances, if true, suggest that a reasonable person would not have felt free to leave the encounter. *See Hashime*, 734 F.3d at 282-84.

The record before us, however, does not reveal whether Pressley relayed to counsel the key facts on which he now relies in his Section 2255 motion. Christensen described an encounter that did not involve the hallmarks of a custodial interrogation, instead suggesting a more casual and voluntary interaction between Pressley and the two officers. Given the

8

significant disparities in the factual accounts offered by Pressley and Christensen, counsel's assessment of the merits of a potential suppression motion would depend on which facts were known to him at the time. In the absence of this evidence in the record, we cannot determine whether, viewed objectively, counsel acted reasonably under the circumstances.

Moreover, contrary to the government's suggestion, the record is devoid of information regarding counsel's reasons, strategic or otherwise, for declining to file a motion to suppress. *See United States v. Runyon*, 983 F.3d 716, 732 (4th Cir. 2020). While *Strickland* "calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind," we have little evidence to evaluate whether counsel's actions were objectively reasonable. *Harrington v. Richter*, 562 U.S. 86, 110 (2011). Because the district court did not hold an evidentiary hearing, counsel did not testify regarding his reasons for not filing a suppression motion. Nor did counsel submit an affidavit to the district court outlining his decision-making process. On this point, the record contains only a sworn statement from Pressley's brother, who relayed a conversation with counsel in which counsel purportedly stated that he would not seek suppression because Pressley "made the statement on himself" and counsel "did not think [a suppression motion] would do any good." The record also contains a journal entry written by Pressley in which he notes, without elaboration, that counsel would not seek suppression of the confession. We thus are left to speculate regarding what information counsel knew about the circumstances of the interrogation, and how he evaluated that information before deciding not to file a motion to suppress.

We pause to emphasize that a "legal misapprehension" about the merits of a suppression motion "will not excuse deficient performance." *Grueninger*, 813 F.3d at 529. Nevertheless, under the circumstances presented here, counsel could have made a reasonable and "informed legal judgment" not to file such a motion, after balancing the likelihood of success on the motion with the risk of requiring Pressley to testify at a suppression hearing. *See id.* And, as discussed above, it is unclear whether counsel was privy to a factual account that reasonably would have supported a suppression motion.

Without knowing what information was available to counsel at the time, or the tactical considerations that competent counsel would be obliged to consider, we cannot determine whether counsel acted within the "wide range of professionally competent assistance" when he refused to file a motion to suppress. *Strickland*, 466 U.S. at 690. For these reasons, we conclude that an evidentiary hearing is required: (1) to resolve disputed facts relevant to the determination whether Pressley was in custody at the time of his interrogation; (2) to clarify what information about the interrogation was known to counsel at the time; and (3) to identify the strategic factors that counsel may have reasonably considered. *See Runyon*, 983 F.3d at 732 (citing 28 U.S.C. § 2255(b) and remanding for evidentiary hearing when record was "murky" regarding counsel's strategic considerations). Resolution of these issues will inform whether counsel rendered deficient performance by declining to file a motion to suppress Pressley's incriminating statements.

## C.

We observe that even if the district court resolves these issues in Pressley's favor and concludes that counsel rendered deficient performance, Pressley also must show that

he was prejudiced by counsel's error. To satisfy the prejudice prong, Pressley must demonstrate "(1) that the motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial." *Grueninger*, 813 F.3d at 525. The first question, whether the motion likely would have been granted, cannot be answered on the present record because the motion was never filed and Pressley never testified. That question may only be answered after Pressley presents his evidence, including his testimony, regarding why the motion would have been meritorious. For the reasons set forth above, if the district court finds on remand that Pressley was subject to a custodial interrogation without being given *Miranda* warnings, a motion to suppress would have been meritorious and likely to have been granted, satisfying the first prong of the prejudice analysis. *See id.*

The government argues, however, that Pressley cannot show a reasonable probability that he would have been acquitted even if the incriminating statements had been excluded. The government points to the voluminous evidence presented at trial showing Pressley's extensive involvement in the drug distribution conspiracy and related financial crimes. Aside from the testimony of Christensen and Beers, the government presented more than a dozen witnesses, including two informants who had conducted controlled purchases of cocaine from Pressley, as well as several of Pressley's co-conspirators who had cooperated with the government.

Although we agree that the evidence against Pressley was significant, he nevertheless can establish that he was prejudiced by the admission of his incriminating statements. To reach a conclusion of prejudice, we need not hold that the government's

11

other evidence was "insubstantial," "or that [the other evidence] could not have supported a guilty verdict in the absence of [the] confession." *Grueninger*, 813 F.3d at 532. Rather, an improperly admitted confession can be prejudicial even in the face of substantial other evidence of guilt, given the potential that a confession will have "a devastating and pervasive effect on the outcome of a trial." *Id.* at 531 (citation and internal quotation marks omitted). As the Supreme Court has explained:

> A confession is like no other evidence. Indeed, the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. The admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so.

*Arizona v. Fulminante*, 499 U.S. 279, 296 (1991) (citation and alterations omitted). To determine whether admission of Pressley's confession was prejudicial, we look to the content of the statements and to their centrality in the government's case. *Grueninger*, 813 F.3d at 531-32.

In the present case, Pressley's confession was detailed and far-reaching in scope. He named multiple co-conspirators, including Taylor, and identified large quantities of narcotics he had participated in distributing over more than a decade. He detailed specific drug transactions with these co-conspirators, and stated that he had used drug proceeds to buy a personal vehicle. A memorandum memorializing the interview was entered into evidence at trial, and Christensen's testimony recounting Pressley's confession accounts for twenty pages of the trial transcript.

12

The government relied on Pressley's statements as a centerpiece of its presentation. In addition to Christensen's lengthy recitation of the interview, the government highlighted the confession to the jury during closing arguments. The government maintained that it had proven the drug quantities charged in the indictment based on the amounts that Pressley admitted distributing. In the words of government counsel, the jury's work was "done" upon considering Pressley's admissions. Government counsel also stated that "Pressley's own statement puts him over the five kilograms or more of powder cocaine that the government alleged." Counsel further emphasized that its cooperating witnesses at trial corroborated the statements Pressley himself had made, thereby bolstering the witnesses' credibility. And at the end of its rebuttal argument, government counsel returned to Pressley's confession, reiterating that "Pressley admitted it. He admitted that he bought the [vehicle in question] with drug proceeds. He admitted that he was a drug dealer. And that's a fact. That is a fact."

Upon our review of this record, we are left with no doubt that Pressley's incriminating statements reasonably could have impacted the jury's assessment of his guilt. Notably, Pressley's co-defendant, who did not provide a confession, was acquitted on all charges. Given the damaging impact of confessions in general, the particularly inculpatory nature of Pressley's statements, and the "centrality of the confession to this case, we cannot be confident that there is no reasonable probability" that Pressley's statements affected the outcome of the trial. *Grueninger*, 813 F.3d at 532 (internal quotation marks omitted). Accordingly, should the district court conclude that counsel was deficient in failing to file a suppression motion, Pressley also has satisfied the prejudice prong of *Strickland*.

13

III.

For these reasons, we vacate the district court's judgment. We remand for an evidentiary hearing to resolve the factual questions discussed in Section II.B of this opinion.


*VACATED AND REMANDED, WITH INSTRUCTIONS*