JORDAN, Circuit Judge,
joined by WILSON, MARTIN, ROSENBAUM, and JILL PRYOR, Circuit Judges,
dissenting:
If we are candid, we should acknowledge that the best we can do is predict which line of authority the Supreme Court will use to decide whether, in an AEDPA habe-as case, it is appropriate to presume that the Georgia Supreme Court’s summary denial of a certificate of probable cause is based on the rationale articulated by the trial court in its reasoned decision. My prediction is that the Supreme Court will decide the issue differently than the en banc majority and hold that the presumption in Ylst v. Nunnemaker, 501 U.S. 797, 803, 806, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), governs. With respect, therefore, I dissent.
1. The two cases that the majority primarily relies on — Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), and Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011) — both arose in a scenario where only one state appellate court ruled on the claim and there was no reasoned decision by a lower court. See Richter, 562 U.S. at 96-97, 131 S.Ct. 770; Pinholster, 563 U.S. at 177-79, 131 S.Ct. 1388. There was, in other words, no possibility of looking through the state appellate court’s ruling in either of those cases. That difference is significant, particularly given that the Supreme Court has never (ever) applied *1243 Richter or Pinholster to a case involving a reasoned lower-court decision. ■
2. According to the majority, nothing in Richter suggests that its reasoning is limited to the narrow subset of habeas cases where there is no reasoned decision from any state court. That may be true, but Ylst was similarly silent with respect to its own reach. If the majority is right about the breadth of Richter, then the same goes for Ylst, as nothing in Ylst suggests that its look-through approach is limited to the subset of cases where the state lower court’s rejection of a claim on procedural grounds is later affirmed without explanation. So silence is a legal wash (or, if one prefers betting parlance, a push).
3. As we are reading tea leaves to divine what Richter means, it might be a good idea to start with what the Supreme Court has actually said about Richter. In a recent case citing Richter, the Supreme Court described its scope in narrow terms, limiting it to situations where there is no reasoned lower court decision. See Brumfield v. Cain, — U.S. -, 135 S.Ct. 2269, 2282-83, 192 L.Ed.2d 356 (2015) (characterizing Richter as “requiring federal habeas court to defer to hypothetical reasons state court might have given for rejecting federal claim where there is no ‘opinion explaining the reasons relief has been denied’ ”) (quoting Richter, 562 U.S. at 98, 131 S.Ct. 770) (emphasis added). If the Supreme Court has characterized Richter in this limited way, we should not become literary critics who profess to know the meaning of a work better than its author.
4. It would also be instructive to look at what the Supreme Court has done in a case similar to this one. Premo v. Moore, 562 U.S. 115, 131 S.Ct. 733, 178 L.Ed.2d 649 (2011), an AEDPA habeas case, was heard together with, and was decided on the same day as, Richter. Although Moore did not mention Ylst, or explicitly say that it was looking through to the last reasoned state court decision, that is what the Supreme Court seemed to do.
In Moore, the Oregon post-conviction court denied the defendant’s ineffective assistance of counsel claim because it found that counsel’s efforts to suppress certain evidence would have been “fruitless.” Id. at 119-20, 131 S.Ct. 733. The Oregon Court of Appeals “affirmed without opinion.” See Moore v. Palmateer, 174 Or.App. 321, 26 P.3d 191 (2001). After a federal district court denied the defendant’s petition for a writ of habeas corpus and the Ninth Circuit reversed, the Supreme Court considered whether the state post-conviction court’s reasoned decision (not the unexplained summary affirmance by the Oregon Court of Appeals) was an unreasonable application of federal law. See Moore, 562 U.S. at 132, 131 S.Ct. 733 (“The state postconviction court’s decision involved no unreasonable application of Supreme Court precedent.”). In the absence of a direct holding on the question before us, what the Supreme Court actually did in Moore is another indication that Richter should not be read too broadly. Cf. Oliver Wendell Holmes, The Common Law 5 (Howe ed. 1963) (“The life of the law has not been logic; it has been experience.”).
5.Sears v. Upton, 561 U.S. 945, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010), a non-habeas case decided before the passage of AEDPA, involved the Georgia Supreme Court’s summary denial of a certificate of probable cause. In analyzing the claim at issue, the Supreme Court applied a look-through approach and reviewed not the summary denial, but the last reasoned state court decision. Sears, in my opinion, supports the application of the Ylst presumption here.
The state trial court in Sears ruled that the defendant’s counsel had rendered defi *1244 cient performance with regard to the investigation at the penalty phase, but denied relief because in its view it could not speculate as to what the effect of the additional mitigating evidence (i.e., the additional mitigating evidence that would have been discovered had counsel performed a constitutionally adequate investigation) would have been. When the Georgia Supreme Court summarily denied him a certificate of probable cause, see id. at 946, 130 S.Ct. 3259, the defendant sought a writ of certiorari.
The Supreme Court granted certiorari and reversed, holding that the state trial court had improperly applied the prejudice prong of Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Sears, 561 U.S. at 952-53, 130 S.Ct. 3259. The Supreme Court did not try to imagine hypothetical grounds on which the Georgia Supreme Court could have possibly rejected the ineffectiveness claim (and therefore found no “arguable merit” in the request for a certificate of probable cause). Instead, the Supreme Court repeatedly reviewed and discussed what the state trial court had done, and in fact reversed precisely because of what the state trial court had (improperly) done. See, e.g., id. at 953-54, 130 S.Ct. 3259 (“There are two errors in the state court’s analysis of Sears’ Sixth Amendment claim. First, the court curtailed a more probing prejudice inquiry because it placed undue reliance on the assumed reasonableness of counsel’s mitigation theory.... Second, and more fundamentally, the court failed to apply the proper prejudice inquiry.”). Even the dissent in Sears focused on the rulings of the state trial court. See, e.g., id. at 960, 130 S.Ct. 3259 (Scalia, J., dissenting) (“Since the habeas court made no legal error en route to its Strickland conclusion, the only basis for reversing the judgment here would be disagreement with the conclusion itself[.]”).
Sears was not an AEDPA habeas case, but that difference in procedural context does not matter much, if at all. The Supreme Court had certiorari jurisdiction in Sears pursuant to 28 U.S.C. § 1254(a), which provides for review of “final judgments or decrees rendered by the highest court of a State in which a decision could be had[.]” The AEDPA provision that the majority focuses on here, 28 U.S.C. § 2254(d), allows those held in custody “pursuant to the judgment of a State court” to seek habeas relief, and instructs federal courts to not grant relief unless the state court “decision” was contrary to or involved an unreasonable application of clearly established federal law (as determined by the Supreme Court). To my mind, §§ 1254(a) and 2254(d) are similar in that they allow federal review of state court “judgments.”
I am not, of course, saying that there were two different judgments under review in Sears, or that there are two different judgments under review in this case. The question we address is a different one: whether there should be a rebuttable presumption that where there is a reasoned decision by a lower court, an unexplained denial of relief by a state appellate court is based on the same rationale articulated by the lower court. And Sears suggests that the answer to that question is yes.
6. Two members of the Supreme Court believe that we erred in failing to apply the Ylst look-through presumption to the Georgia Supreme Court’s summary denial of a certificate of probable cause. See Hittson v. Chatman, — U.S.-, 135 S.Ct. 2126, 2128, 192 L.Ed.2d 887 (2015) (Ginsburg, J., joined by Kagan, J., concurring in the denial of certiorari) (“The Eleventh Circuit plainly erred in discarding Ylst. In Richter, the only state court to reject the prisoner’s federal claim had done so in an unexplained order. With no reasoned opin *1245 ion to look through to, the Court had no occasion to cast doubt on Ylst. To the contrary, the Court cited Ylst approvingly in Richter and did again two years later in Johnson v. Williams, 568 U.S.-,-, n.1, 138 S.Ct. 1088, 1094 n.1, 185 L.Ed.2d 105 (2013).”). Two Justices do not a majority make, but their views should be given due consideration.
7.As far as I can tell, all of the circuits to have considered the look-through issue limit Richter to situations where there is no reasoned decision by any state court. See Grueninger v. Dir., Va. Dep’t of Corr., 813 F.3d 517, 525-26 (4th Cir. 2016) (“Richter addressed a situation in which a state habeas petition was presented directly to a state supreme court as an original petition and then denied by that court in a one-sentence summary order, so that there was no reasoned decision by any state court.... The situation is different when there is a state-court decision explaining the rejection of a claim. When a state appellate court summarily affirms a reasoned lower-court decision, or refuses a petition for review, then under Ylst, a federal habeas court is to ‘look through’ the unexplained affirmance!)]”) (internal citations omitted); Cannedy v. Adams, 706 F.3d 1148, 1158 (9th Cir. 2013) (“[I]t does not follow from Richter that, when there is a reasoned decision by a lower state court, a federal habeas court may no longer ‘look through’ a higher state court’s summary denial to the reasoning of the lower state court.”); Woolley v. Rednour, 702 F.3d 411, 422 (7th Cir. 2012) (explaining that Richter, “[b]y its terms” is limited to cases “ ‘[w]here a state court’s decision is unaccompanied by an explanation’ ”) (quoting Richter, 562 U.S. at 98, 131 S.Ct. 770). See also Woodfox v. Cain, 772 F.3d 358, 369 (5th Cir. 2014) (“Under AEDPA, ‘we review the last reasoned state court decision.’ ”) (emphasis added and citation omitted).
There should be strong reasons for creating a circuit split, and I do not see any such reasons here. The views of the Fourth, Fifth, Seventh, and Ninth Circuits, moreover, make practical sense. Starting with a result (the result reached in a summary denial of relief), then coming up with hypothetical reasons to support that result, and then assessing whether such imagined reasons are contrary to or an unreasonable application of clearly established Supreme Court precedent, is not what appellate courts normally do. The notion of a court starting with a result, and then searching far and wide for reasons to justify that result, turns the notion of neutral decision-making on its head. Richter requires us to perform that sort of analysis under AED-PA when there is one (and only one) summary state court decision denying relief, but there is no good reason to expand its reach beyond that limited procedural scenario.
8. The majority’s conclusion is contrary to what we have done in the past. In published AEDPA habeas opinions both before and after Richter, we looked through the Georgia Supreme Court’s summary denial of a certificate of probable cause and reviewed the decision of the state trial court, i.e., the last reasoned state court decision. See Putman v. Head, 268 F.3d 1223, 1242-49 (11th Cir. 2001) (Black, Hull, and Wilson, JJ.); Johnson v. Upton, 615 F.3d 1318, 1330 (11th Cir. 2010) (Carnes, Hull, and Pryor, JJ.); Bishop v. Warden, 726 F.3d 1243, 1255-58 (11th Cir. 2013) (Barkett, Marcus, and Martin, JJ.); Gissendaner v. Seaboldt, 735 F.3d 1311, 1317-33 (11th Cir. 2013) (Carnes, Tjoflat, and Jordan, JJ.). Apparently all of those panel decisions just misread Ylst and/or Richter.
9. Part of the majority’s rationale also clashes with circuit precedent. According to the majority, a federal court would vio *1246 late the requirements of § 2254 if it were to review the whole process by which a prisoner’s federal claim was adjudicated. Because § 2254 refers to a single adjudication and its resulting decision, the majority concludes that a federal court may only review the final state court decision, instead of inspecting how different state courts ruled before that final decision was rendered. See id. The problem with the majority’s reasoning is that it ignores (and would overrule or at least strongly conflict with) our decisions in Windom v. Sec’y, Dep’t of Corr., 578 F.3d 1227 (11th Cir. 2009), Hammond v. Hall, 586 F.3d 1289 (11th Cir. 2009), and Loggins v. Thomas, 654 F.3d 1204 (11th Cir. 2011). In these AEDPA habeas cases we examined and reviewed both the last state court decision and the penultimate state court decision.
For example, in Hammond the Georgia trial court, on collateral review, ruled that counsel had not rendered deficient performance under the standard articulated in Strickland. On appeal, the Georgia Supreme Court expressly declined to address counsel’s performance, and instead held that the defendant failed to show prejudice. When the case reached us, we did not have any trouble examining both the trial court’s decision (on the performance prong) and the Georgia Supreme Court’s decision (on the prejudice prong) in conducting AEDPA review. We held that “where a state trial court rejects a claim on one prong of the ineffective assistance of counsel test and the state supreme court, without disapproving that holding, affirms on the other prong, both of those state court decisions are due AEDPA deference.” Hammond, 586 F.3d at 1332.
We therefore went on to review the reasoning given by both Georgia courts, at each level of review, to decide whether “both reasons for rejecting the claim are ‘contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.’ ” Id. (emphasis added). In choosing to examine both decisions, we explained that “the critical fact ... is that the Georgia Supreme Court does not appear to have disagreed with the trial court’s decision on the deficiency element. The court could have easily expressed its disagreement, if any, but it did not do so.” Id. at 1331.
In other words, we held in Hammond that silence on the part of the Georgia Supreme Court implied consent with the trial court’s reasoning. That, by the way, is the assumption that Ylst is based on: “The maxim is that silence implies consent, not the opposite — and courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below.” Ylst, 501 U.S. at 804, 111 S.Ct. 2590. But here, for some reason, silence does not imply consent. Maybe I’m missing something, but it seems hard to- reconcile the majority’s categorical rejection of a look-through presumption outside the Ylst procedural bar context with our decisions in cases like Hammond. See also Loggins, 654 F.3d at 1217 (explaining, post-Richter, that “[o]ur case law also makes clear that we accord AEDPA deference not only to the adjudications of state appellate courts but also to those of state trial courts that have not been overturned on appeal”); Windom, 578 F.3d at 1249-51 (granting AEDPA deference to the state trial court’s rejection of an ineffective assistance of counsel claim for lack of prejudice, even though the Georgia Supreme Court affirmed on performance grounds without reaching the prejudice issue). If, as the majority says, a federal court would violate § 2254 by looking at how lower state courts ruled, as opposed to the state supreme court ruled, then the underlying rationale for Windom, Hammond, and *1247 Loggins has been wiped away by a series of keystrokes.
Unfortunately for the district courts that now have to implement today’s ruling, and the lawyers who have to live with it, the majority does not explain why it believes its holding is consistent with Windom and its progeny. As I understand our circuit precedent following today’s decision, when a state supreme court denies a claim in a reasoned opinion by relying on a single rationale and expressly declines to address a different rationale articulated by the lower court, a federal habeas court can nevertheless look through that state supreme court opinion and review (with AEDPA deference) the different rationale offered by the lower court in its reasoned opinion, on the theory that the supreme court’s silence indicates acquiescence as to that unaddressed rationale. But when a state supreme court denies a claim summarily— i.e., without saying anything whatsoever about the lower court’s rationale — a federal habeas court cannot look through the summary denial to the reasoned opinion of the lower court because in that scenario, apparently, silence does not indicate consent. Why this is so remains a mystery, and it will be left to district courts and future Eleventh Circuit panels to sort out the doctrinal mess.