**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-7593**

───────────────

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

GLORIA PATRICIA TAYLOR,

        Defendant - Appellant.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Theodore D. Chuang, District Judge.  (8:15-cr-00265-TDC-1; 8:19-cv-00065-TDC)

───────────────

Argued:  October 25, 2022                    Decided:  December 5, 2022

───────────────

Before GREGORY, Chief Judge, and WYNN and THACKER, Circuit Judges.

───────────────

Affirmed by published opinion. Judge Thacker wrote the opinion, in which Chief Judge Gregory and Judge Wynn joined.

───────────────

**ARGUED:**  Stephen Bennett Mercer, RAQUINMERCER LLC, Rockville, Maryland, for Appellant.   Christopher Michael Sarma, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:**  Erek L. Barron, United States Attorney, Baltimore, Maryland, Kelly O. Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

───────────────

THACKER, Circuit Judge:

Appellant Gloria Patricia Taylor ("Appellant") appeals the district court's order denying relief on her 28 U.S.C. § 2255 motion to vacate, set aside, or correct her sentence. Appellant claimed that her trial counsel rendered ineffective assistance by failing to move to suppress information obtained from a search warrant that relied, in part, on the Government's warrantless procurement of certain data from her cell phone service provider. Because the Government relied in good faith on court orders issued in accordance with the Federal Stored Communications Act ("SCA"), 18 U.S.C. § 2703 *et. seq.*, did not request the data in its subpoenas, and the use of a subpoena to obtain the data was lawful at the time, we hold the district court's admission of the challenged evidence must be sustained. Thus, any motion to suppress filed before Appellant's trial would not have been meritorious. Therefore, we affirm.

I.

A.

In June 2013, United States Drug Enforcement Administration ("DEA") agents in Tucson, Arizona, notified their Maryland counterparts that a suspicious shipment leaving Tucson was scheduled to arrive at a shipping depot in Brentwood, Maryland. On July 1, 2013, at approximately 7:00am, DEA agents seized three crates containing approximately 1,387 pounds of marijuana from R&L Carriers, a delivery company located in Baltimore, Maryland. Two of the crates were addressed to Royal Gem & Mineral ("Royal Gem") in Landover, Maryland, and the third crate was addressed to Artistique Connection ("Artistique") in Brentwood.

2

DEA agents in Tucson identified Appellant as a potential suspect because surveillance footage captured a vehicle rented in Appellant's name parked outside the Tucson shipping depot when the three crates of marijuana shipped. Investigators then subpoenaed Southwest Airlines for Appellant's travel records and discovered that Appellant had booked numerous flights to and from Phoenix, Arizona. Appellant's flight times were consistent with the timing of several shipments from Tucson to various locations in Maryland, including to Royal Gem and Artistique.

As part of its investigation into Appellant, the DEA served several administrative subpoenas pursuant to 21 U.S.C. § 876[1] and the SCA on the telecommunications company Sprint Corporation ("Sprint").[2] The SCA prohibits companies that provide electronic communication services from disclosing the contents of the information stored on their systems, except under certain circumstances where the government may compel a provider to disclose such content. *See* 18 U.S.C. § 2703(a)–(d). Relevant here, the DEA issued three subpoenas covering the following periods:

- October 9, 2013 to January 6, 2014 (issued on January 7, 2014);

---

[1] Pursuant to 21 U.S.C. § 876, "the Attorney General may subpoena witnesses, compel the attendance and testimony of witnesses, and require the production of any records . . . which the Attorney General finds relevant or material to" an investigation into certain "controlled substance" offenses.

[2] The Sprint Corporation merged with T-Mobile US, Inc. on April 1, 2020. *T-Mobile Completes Merger with Sprint to Create the New T-Mobile*, T-Mobile (Apr. 1, 2020), https://www.t-mobile.com/news/un-carrier/t-mobile-sprint-one-company (saved as ECF opinion attachment).

3

- January 7, 2014 to February 18, 2014 (issued on February 19, 2014); and

- February 19, 2014 to May 14, 2014 (issued on May 15, 2014).

Each subpoena requested "All customers/subscribers for the date range given, provide name and street and/or mailing address, Local and long distance telephone connection records, including incoming and outgoing calls for: 757-945-6589." J.A. 954–56.[3]

In response to the subpoenas, Sprint turned over Appellant's subscriber and account information along with "call detail reports" for the requested periods. J.A. 934. The call detail reports for the target phone number included the calling number, the called number, the digits dialed, the type of call, the start and end time and date for each call, and the duration of each call. Additionally, for each of the three subpoenas, Sprint included the "repoll" data for every call in the call records. A repoll number "reflects which phone switch handled the call," and each number is associated with a specific metropolitan area or areas. *Id.* For example, repoll number "27" is associated with Oklahoma City, Oklahoma and repoll number "40" is associated with Little Rock, Arkansas. The call detail reports for Appellant's phone number showed several of the calls made and received between October 2013 and January 2014 were associated with a repoll number of "449," which corresponds to a phone switch for the Phoenix metropolitan area.

On March 12, 2014, a federal magistrate judge in Maryland issued an administrative order pursuant to 18 U.S.C. § 2703(d) requiring the production of historical cellular site

---

[3] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

4

location information ("CSLI") for the (757) 945-6589 phone number, which DEA agents had linked to Appellant. On May 2, 2014, the Government, using the historical CSLI, obtained a prospective Global Positioning System ("GPS") tracking warrant pursuant to Federal Rule of Criminal Procedure 41[4] and 18 U.S.C. § 2703(c)(1)(A),[5] which was extended several times. Investigators used the GPS data to determine that Appellant travelled to Tucson on July 15, 2014 and returned to Maryland on July 23, 2014. GPS data also put Appellant in Tucson again from September 20–23, 2014.

On September 30, 2014, DEA agents used GPS data to track Appellant to a U-Haul facility in Landover, Maryland, where agents observed Appellant rent a U-Haul van. At approximately 3:46pm, law enforcement officers saw the same U-Haul parked in Appellant's driveway and watched Appellant and her son unload items from it. At approximately 4:43pm, officers observed Appellant and her son removing a large wooden crate from the back of the U-Haul. At that point, the officers detained Appellant and her son, pending a search and seizure warrant application. The officers then conducted a dog sniff, which revealed that the crate contained a suspicious substance.[6] At 4:58pm,

---

[4] Rule 41 permits a magistrate judge to issue a warrant for the installation of a tracking device based on a finding of probable cause. Fed. R. Crim. P. 41(d).

[5] The SCA authorizes the use of the Federal Rules of Criminal Procedure to obtain "a record or other information pertaining to a subscriber or customer" of an "electronic communication service." 18 U.S.C. § 2703(c)(1)(A). The statute itself does not preclude the collection of real-time tracking data. *See id.*

[6] The district court separately addressed Appellant's additional claim that her trial counsel failed to file a motion to suppress based on a dog sniff of the U-Haul van from inside the curtilage of the residence. However, we denied Appellant's post-oral argument (Continued)

5

Appellant and her son were informed of their rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Appellant denied knowing the contents of the crate and refused to let the officers search her residence or the U-Haul.

That same day -- September 30, 2014 -- the Government obtained a search warrant ("Search Warrant") for Appellant's residence, the U-Haul, the crate, and Appellant's two cars. The Government supported its search warrant application with a seven-page probable cause affidavit detailing much of what is described above, including Appellant's flight records, U-Haul rentals, and GPS tracking data. Officers recovered 286 pounds of marijuana from the crate inside the U-Haul. Officers also recovered nine cell phones, two drug ledgers, and $30,000 cash from Appellant's house. On October 1, 2014, Appellant provided a written statement in which she admitted responsibility for the items seized from her house and the van.

### B.

On March 14, 2016, a federal grand jury charged Appellant with one count of conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, two counts of using a communications device to facilitate narcotics trafficking in violation of 21 U.S.C. § 843(b), and one count of possession with intent to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 841.

---

motion to expand the scope of the certificate of appealability to include this claim. Therefore, the claim is not addressed in this appeal.

At trial, R&L Carriers driver James Willis ("Willis") testified that he regularly delivered packages to Appellant. Willis claimed that he first met Appellant when he had tried to deliver a crate, but the individuals at the mailing address refused to accept the package. Thereafter, Appellant contacted Willis and asked that he meet her across the street from the mailing address with the crate. Appellant showed up with a U-Haul rental vehicle, and Willis gave her the crate. According to Willis's testimony, Appellant requested that Willis become her "regular delivery driver" for all future deliveries. J.A. 479. When law enforcement officers intercepted the three crates of marijuana on July 1, 2013, R&L Carriers personnel told Willis that officers had found drugs in the crates. Willis testified that he confronted Appellant who told him that "she was sorry," and offered to pay Willis $10,000 if he could "snatch" the seized crates and return them to her, but Willis refused. *Id.* at 511–12.

On April 28, 2016, a jury convicted Appellant of all four counts, and Appellant was sentenced to 144 months in prison. Following her conviction, Appellant retained new counsel and filed an appeal. On May 23, 2017, we affirmed Appellant's convictions and sentence. *United States v. Taylor*, 692 F. App'x 114, 118 (4th Cir. 2017) (per curiam).

## C.

On January 7, 2019, Appellant filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, claiming that her trial counsel had rendered ineffective assistance by not moving to suppress information resulting from the Search Warrant. Relevant here, Appellant alleged that the Search Warrant application referenced cell phone data, including historical CSLI and GPS tracking data, that was collected in

violation of the Fourth Amendment.  Specifically, Appellant argued that DEA agents had (1) collected CSLI pursuant to § 2703(d), in violation of the Fourth Amendment; (2) collected GPS real-time tracking data pursuant to Federal Rule of Criminal Procedure 41 and § 2703(c)(1)(A), rather than pursuant to the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C § 3117;[7] and (3) used the GPS real-time tracking data in support of the Search Warrant application.  *Id.*

On March 19, 2020, the district court ordered the Government to supplement the record by "filing all of the applications for historical cell site location information, including all attachments, that resulted in the issuance" of "four separate orders authorizing the production of historical cell site location information."  J.A. 885.  The Government complied with the order and produced its applications for the § 2703(d) orders directing Sprint and other cellular telephone companies to produce Appellant's historical CSLI.

On April 17, 2020, the district court denied Appellant's § 2255 motion, holding that a motion to suppress the historical CSLI and GPS tracking data used in the Search Warrant application would likely not have been meritorious.  In doing so, the district court recognized that our decision in *United States v. Graham* (*Graham I*), 796 F.3d 332 (4th Cir. 2015) -- rendered after the Government obtained the 2014 § 2703(d) orders and warrants at issue, but before the motions deadline and Appellant's trial -- held that

---

[7] The ECPA provides that a tracking warrant may only order monitoring of the device "outside that jurisdiction if the device is installed in that jurisdiction."  1 U.S.C. § 3117(a).  Because the scope of the certificate of appealability is limited to whether trial counsel rendered ineffective assistance by failing to file a suppression motion based on the Government's allegedly unlawful acquisition of repoll number data, Appellant has not pursued this argument in this appeal.

8

"obtaining historical CSLI constitutes a search, such that the Fourth Amendment bars the Government from obtaining it 'without first securing a judicial warrant based on probable cause.'" *United States v. Taylor*, No. 19-0065, 2020 WL 1904710, at *4 (D. Md. Apr. 17, 2020) (quoting *Graham I*, 796 F.3d at 360–61). This court, sitting en banc, reversed *Graham I*'s holding a month after Appellant's trial. *United States v. Graham* (*Graham II*), 824 F.3d 421 (4th Cir. 2016). However, the Supreme Court held in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), that law enforcement must secure a warrant to obtain historical CSLI. *Id.* at 2213; *see also United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) (acknowledging that *Carpenter* abrogated *Graham II*).

Nevertheless, the district court reasoned, "where both the § 2703(d) orders and the Search Warrant that explicitly relied on historical CSLI obtained through those orders were issued by magistrate judges, the good faith exception likely would have precluded the suppression of the historical CSLI and any [of] the fruits of the Search Warrant itself." *Id.* at *5. As to the GPS real-time tracking data, the district court held that the warrants in question were issued under the same probable cause standard that would have applied had the agents relied on the ECPA rather than on the SCA. *Id.* at *6. Alternatively, the district court found that even if such use of the SCA were not permissible, the good faith exception would apply because the Government reasonably relied on § 2703(d) orders and warrants issued by neutral magistrate judges to collect this data. *Id.* at *7.

D.

On May 13, 2020, Appellant filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e), seeking reconsideration of the district court's

9

order denying her § 2255 petition.  Relevant here, Appellant argued that the Government's applications for historical CSLI pursuant to § 2703(d) of the SCA demonstrated that "DEA agents collected historical location information for [Appellant's] phone based on 'routing numbers' without first obtaining a § 2703(d) order."  J.A. 922–23.  Specifically, Appellant points to the part of the application that reads, "[Appellant] was the subscriber for the phone in question, which was used in Arizona in 2013 and 2014 at times when airline records showed that [Appellant] had traveled there."  *Id.* at 895.

On August 17, 2020, the district court ordered the Government to produce the subpoenas that it had used to identify (757) 945-6589 as a phone number assigned to Appellant.  The district court also ordered the Government to provide all documents that were produced in response to those subpoenas as well as any other documents that the Government used to link Appellant to the target phone number.  The Government complied by providing the three administrative subpoenas described above.

On September 14, 2020, the district court denied Appellant's motion to alter or amend the judgment.  The district court noted that unlike historical CSLI, repoll data "provides only a single point of reference consisting of the major city or metropolitan area in which the phone switch used to route the call is located" and does "not include a series of time-stamped records created as a mobile phone continuously pings nearby cell towers, pinpointing the location within a relatively small area."  *Taylor v. United States*, No. 19-0065, 2020 WL 5513502, at *2 (D. Md. Sept. 14, 2020) (internal quotation marks and citations omitted).  Thus, because repoll data does "not create a record of [an individual's] physical movements over time," the district court concluded that it "cannot be deemed to

10

be historical CSLI." *Id.* Accordingly, because the district court determined that repoll data was not historical CSLI, it reasoned that the officers did not need a search warrant to acquire a subscriber's repoll numbers.

Alternatively, the district court concluded that Appellant's trial counsel could not have successfully moved to suppress this information in any event because "the good faith exception would clearly apply." *Taylor*, 2020 WL 5513502, at \*2. The district court determined, "even if the repoll information could . . . be deemed to be subject to a higher standard," the Government acted in good faith given that it "did not request location information as part of its general request for subscriber information and telephone connection records," and the Government's "use of a subpoena to obtain the information was lawful at the time." *Id.*

Moreover, the district court determined that even if the Government did not reference the repoll data in its § 2703(d) application, the order would have nevertheless issued because the application referenced Appellant's flight records, suspicious text messages and calls between Appellant and Willis, as well as the surveillance footage capturing Appellant's rental car outside the shipping depot during the July 2013 drug shipment. Therefore, given that the § 2703(d) orders would not have been suppressed, the district court found that any challenge to the Search Warrant authorizing the search of Appellant's house was equally without merit.

E.

On December 21, 2020, Appellant filed a brief in this court pursuant to Local Rule 22(a) requesting a certificate of appealability in accordance with 28 U.S.C. § 2253(c)(2).

11

Appellant argued that obtaining repoll data pursuant to an administrative subpoena represented an intrusion on "protected location information" and that the district court had been wrong to deny her Rule 59(e) motion. Appellant's Informal Opening Br. at 9.  On January 19, 2022, we granted Appellant's motion for a certificate of appealability, limited to the following issue: "Whether trial counsel rendered ineffective assistance by failing to file [a] suppression motion based on [the] Government's allegedly unlawful acquisition of repoll number data." ECF No. 15.

## II.

We review a district court's denial of a Rule 59(e) motion to alter or amend a judgment for abuse of discretion standard.  *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 750 (4th Cir. 2018).  We review any legal conclusions as to whether certain law enforcement conduct infringes Fourth Amendment rights de novo.    *United States v. Breza,* 308 F.3d 430, 433 (4th Cir. 2002).

## III.

### A.

The Sixth Amendment right to counsel guarantees not only the presence of a lawyer, but also the effective assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 685 (1984).  To succeed on a claim of ineffective assistance of counsel, a movant must show that (1) counsel's performance was constitutionally deficient, and (2) such deficient performance prejudiced her defense.  *Id.* at 687–88, 692.  Where the claim of ineffective assistance is based on counsel's failure to file a suppression motion, in order to satisfy the prejudice prong, the movant must show "(1) the [suppression] motion was meritorious and

12

likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of [her] trial." *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021) (first alteration in original) (internal quotation marks omitted).

Here, Appellant argues that her trial counsel rendered ineffective assistance by failing to file a suppression motion based on the Government's allegedly unlawful acquisition of her repoll number data. Appellant contends that the Government's warrantless procurement of her repoll data from her cell phone service provider was an unreasonable search in violation of the Fourth Amendment.

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. A "search" occurs for purposes of the Fourth Amendment where the government violates a person's "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *see also Kyllo v. United States*, 533 U.S. 27, 33–34 (2001). Generally, government agents cannot execute a search without first obtaining a warrant based on "probable cause." U.S. Const. amend IV; *see also Smith v. Travelpiece*, 31 F.4th 878, 884 (4th Cir. 2022). Warrantless searches are "*per se* unreasonable" unless they fall within one of the "few specifically established and well-delineated exceptions" to the Fourth Amendment's warrant requirement. *United States v. Davis*, 690 F.3d 226, 241–42 (4th Cir. 2012) (internal quotation marks omitted).

The exclusionary rule is a judicially created remedy that "prevents the government from using evidence obtained as a result of an illegal search against the victim of that search." *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (citing *Utah v. Strieff*,

13

579 U.S. 232, 237 (2016)); *see also United States v. Riley*, 920 F.3d 200, 205 (4th Cir. 2019). This includes "both the primary evidence obtained as a direct result of an illegal search . . . and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Strieff*, 579 U.S. at 237 (internal quotation marks omitted).

However, an exception to the exclusionary rule exists where government agents acted with an objectively reasonable "good faith" belief that their conduct was lawful. *Davis v. United States*, 564 U.S. 229, 238 (2011); *see also United States v. Brunson*, 968 F.3d 325, 334 (4th Cir. 2020). This "good faith exception" has been applied to evidence obtained "in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment." *Illinois v. Krull*, 480 U.S. 340, 342 (1987). And "[u]nless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law." *Id.* at 349–50.

### B.

The Government obtained Appellant's repoll number data through use of administrative subpoenas issued pursuant to the SCA. The SCA provides "an avenue for law enforcement entities to compel a provider of electronic communication services to disclose" certain telecommunications records. *In re Application of U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d)* (*Application for Section 2703(d) Ord.*), 707 F.3d 283, 287 (4th Cir. 2013). In seeking access to basic subscriber information, the government need not give prior notice to the subscriber or customer. 18 U.S.C. § 2703(c)(3). Rather,

14

governmental entities may use an administrative subpoena to obtain basic subscriber information, including a subscriber's name, address, telephone number or other subscriber number or identity, a subscriber's length of service and the types of services the subscriber or customer utilized. *Id.* §§ 2703(c)(2)(A)–(F), 2703(d).

To procure other information pertaining to a subscriber or customer without consent, the government must secure either a probable cause warrant or a court order. 18 U.S.C. § 2703(c)(1). However, the statute offers no express direction as to when the government should seek a warrant versus a § 2703(d) order. A §2703(d) court order will issue where the agency provides "specific and articulable facts showing that there are reasonable grounds to believe" that the records sought "are relevant and material to an ongoing criminal investigation." *Id.* § 2703(d). This standard is less stringent than the probable cause standard generally required for a search warrant. *See Application for Section 2703(d) Ord.*, 707 F.3d at 287 ("This is essentially a reasonable suspicion standard.").

We have not yet addressed whether an individual has a reasonable expectation of privacy in her repoll number data, and we need not do so today. Even assuming that repoll data is subject to the greater protection of a court-approved warrant, the Government lawfully obtained the information at issue here in good faith reliance on pre-*Graham I* court orders and subpoenas issued in accordance with the SCA. When the Government served administrative subpoenas on Sprint in 2014, it acted in good faith pursuant to the SCA, which permits the collection of certain subscriber information through a subpoena. At that point, we had not yet decided *Graham I*, and the Supreme Court "consistently ha[d] held

15

that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) (holding that use of pen register was not a "search" for Fourth Amendment purposes); *United States v. Miller*, 425 U.S. 435, 442–43 (1976) (holding that the government could obtain bank records through a subpoena); *see also United States v. Felder*, 993 F.3d 57, 75–76 (2d Cir. 2021) ("Prior to *Carpenter*, all five courts of appeals to have considered the question relied on [the third-party] doctrine in holding that government acquisition of historical cell-site location information from third parties was not subject to the Fourth Amendment's warrant requirement.") (citing *United States v. Graham* (*Graham II*), 824 F.3d 421, 424–25 (4th Cir. 2016)).  Thus, until the Supreme Court declined "to extend *Smith* and *Miller* to the collection of CSLI," *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018), law enforcement officers had reason to believe that they could collect information from a cell phone provider as long as they complied with the SCA.  *See United States v. Chavez*, 894 F.3d 593, 608 (4th Cir. 2018) (holding that historical CSLI collected through the SCA and court orders before *Graham I* and *Carpenter* was subject to the good faith exception).

Indeed, in *Graham I*, we affirmed the district court's admission of CSLI data because the government relied in good faith on a facially valid § 2703(d) court order.

Here, the subpoenas sought "All customers/subscribers for the date range given, provide name and street and/or mailing address, Local and long distance telephone connection records, including incoming and outgoing calls for: 757-945-6589," J.A. 954–56, all of which is permitted subscriber information under the SCA, 18 U.S.C. § 2703(c)(2)(A)–(F).  The Government never expressly requested repoll data from Sprint via

a subpoena.  Therefore, any motion to suppress filed before Appellant's trial would not have been meritorious, even in light of *Graham I*, because the officers had reason to believe in 2014 that it was lawful to collect this information through an administrative subpoena.

But Appellant asks this court to look past the language of the subpoenas and find that the agents here were "on notice after Sprint's responsive production to the first subpoena . . . that Sprint includes repoll location data in response to an administrative subpoena."  Appellant's Opening Br. at 9.  While this may be true, even if Sprint did routinely turn over such information, Appellant has not identified any legal obligation the Government had to ask Sprint to stop doing so.  Rather, the Government's subpoenas ask for statutorily authorized materials.  The Government cannot be held responsible when a subpoena recipient exceeds the bounds of a subpoena and produces more information than was requested or required.  *Coolidge v. New Hampshire*, 403 U.S. 443, 487–90 (1971) (holding that police who obtained evidence voluntarily from a suspect's wife did not need a search warrant because the officers exerted no effort to coerce or dominate her and were not obligated to refuse her offer to take the evidence).  Accordingly, we hold that the district court did not err by concluding that a motion to suppress would not have been meritorious because the good faith exception applies.

## IV.

For the foregoing reasons, the district court's order denying Appellant's motion to alter or amend the judgment is

*AFFIRMED.*

17